**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5084-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

F.B.,

     Defendant-Appellant,

and

D.M., S.M., and D.B.,

     Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.L.B., JR.,
T.M.B., and M.A.B.,

     Minors.

_____

Argued May 6, 2019 – Decided May 14, 2019

Before Judges Sabatino, Haas and Susswein.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0126-18.

Ryan T. Clark, Designated Counsel, argued the cause for appellant (Joseph F. Krakora, Public Defender, attorney; Ryan T. Clark, on the briefs).

Ashley L. Davidow, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ashley L. Davidow, on the brief).

Todd S. Wilson, Designated Counsel, argued the cause for minor D.L.B., Jr. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Todd S. Wilson, on the brief).

Cory H. Cassar, Designated Counsel, argued the cause for minor T.M.B. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Cory H. Cassar, on the brief).

Margo E.K. Hirsch, Designated Counsel, argued the cause for minor M.A.B. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Margo E.K. Hirsch, on the brief).

PER CURIAM

Defendant F.B.[1] appeals from the Family Part's June 21, 2018 judgment

of guardianship terminating her parental rights to her three children, D.L.B., Jr.

_____

[1] We refer to the adult parties by initials, and to the children by fictitious names, to protect their privacy. R. 1:38-3(d)(12).

(Donald), born in 2006, T.M.B. (Trevor), born in 2010, and M.A.B. (Mia), born in 2012.[2] Defendant contends that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supports the termination on appeal as it did before the trial court.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons set forth by Judge Francine I. Axelrad in her thorough and thoughtful oral opinion rendered on June 21, 2018.

We will not recite in detail the history of the Division's involvement with defendant. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Axelrad's decision. We add only the following comments.

We are satisfied that commencing with the Division's first contact with defendant and her children in 2007, the Division provided multiple opportunities for defendant to address her long-standing mental health issues. However,

---

[2] The judgment also terminated the parental rights of Donald's father, D.B.; Trevor's father, D.M.; and Mia's father, S.M. The children's fathers have not filed appeals from that determination.

despite the Division's intervention, defendant was unable to overcome the deficiencies that rendered her unable to safely parent Donald, Trevor, and Mia. Accordingly, the children have been in the Division's custody since March 2013, except for an eight-month period between December 31, 2016 and August 3, 2017. The Division's goal is select home adoption[3] of all three children by the same resource parents.

The Division presented uncontradicted expert testimony that clearly and convincingly demonstrated that because of her mental illness, defendant could not safely parent the children now or in the future. The Division's expert clinical and forensic psychologist, Dr. Linda R. Jeffrey, diagnosed defendant with schizoaffective disorder, severe and chronic adjustment disorder, and a personality disorder reflecting paranoid features. Dr. Jeffrey found this mental illness to be pervasive in nature and likely to adversely affect and decrease defendant's parenting capacity.

Although defendant's condition could be treated to some degree with medication, defendant was noncompliant with her treatment regimen and continually relapsed into mental illness. Significantly, Dr. Jeffrey found that

---

[3] Select home adoption refers to "a process that includes looking for an adoptive home in New Jersey and registering the child[ren] on the national adoption exchange." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 98 (2008).

A-5084-17T1

defendant's "inability to achieve sustained remission from serious features of mental illness presents a significant risk of harm to her children. She is likely to display poor parenting judgment, instability and a lack of personal insight and attunement to her children's needs." Dr. Jeffrey concluded that defendant was not prepared to provide a minimum level of safe parenting for the children.

Dr. Jeffrey conducted a bonding evaluation of defendant and Donald, Trevor, and Mia, and found there was only an insecure attachment between defendant and the children. Dr. Jeffrey explained that this insecure attachment placed the children at risk of harm because it taught the children to associate affection with insecurity and was not constructive for their social development.

Defendant did not testify at trial and did not offer any expert testimony contradicting the opinions expressed by Dr. Jeffrey.

In her extensive opinion, Judge Axelrad reviewed the evidence presented at the three-day trial, and concluded that (1) the Division had proven all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and (2) termination of defendant's parental rights was in the children's best interests. In this appeal, our review of the trial judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by her factual findings so long as

they are supported by sufficient credible evidence. <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007) (citing <u>In re Guardianship of J.T.</u>, 269 N.J. Super. 172, 188 (App. Div. 1993)).

After reviewing the record, we conclude that Judge Axelrad's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in her well-reasoned opinion.

In so ruling, we reject defendant's contention that she should have been given more time to demonstrate that she would now finally comply with taking her medication. As Dr. Jeffrey explained in her uncontracted expert testimony, medication compliance is one of the most serious problems in the treatment of mental illnesses. Dr. Jeffrey found that, like many patients, defendant exhibited a common cycle over the course of her interactions with the Division between 2007 and 2018. During that period, she would sometimes temporarily recover from her mental illness, but become symptomatic again because she chose to stop taking her medications.

This cycle resulted in defendant acting out in ways that were harmful to herself and harmful to the children. For example, although defendant was briefly reunited with the children beginning on December 31, 2016 after she

6

resumed taking her medications, she abruptly stopped doing so sometime prior to early August 2017. As a result, the Division had to again remove the children from defendant's care after the police, who were responding to a report of defendant yelling out of her window for several hours at a dog, found her in a manic and agitated state. Defendant was thereafter hospitalized for approximately sixty days.

Children are entitled to a permanent, safe and secure home. We "acknowledg[e] the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). As public policy increasingly focuses on a child's need for permanency, "[t]he emphasis has shifted from protracted efforts for reunification with a birth parent to an expeditious, permanent placement to promote the child's well-being." Ibid. (citing N.J.S.A. 30:4C-11.1). That is because "[a] child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." Ibid.

The question then is "whether the parent can become fit in time to meet the needs of the children." N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J.

A-5084-17T1

Super. 235, 263 (App. Div. 2005); see also N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512 (2004) (indicating that even if a parent is trying to change, a child cannot wait indefinitely).

After carefully considering the expert testimony of Dr. Jeffrey, Judge Axelrad reasonably determined that defendant was still unable to parent the three children, and would not be able to do so for the foreseeable future. Under those circumstances, we agree with the judge that any further delay of permanent placement would not be in the best interests of the children.

We also reject defendant's contention that the Division violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 to 12213, by failing to provide her with services that accommodated and were tailored to her disabilities. Defendant did not raise this argument before the trial court and it does not involve jurisdictional or public interest concerns. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (citing Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Moreover, it is well established that "the ADA does not provide a defense to a termination of parental rights proceeding" because to do so "would improperly elevate the rights of the parent above those of the child." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001). Finally, similar to the circumstances

8

in <u>A.G.</u>, the Division here provided defendant with services to address the problems engendered by her mental illness.  As was the case in <u>A.G.</u>, "those efforts did not bear fruit."  <u>Ibid.</u>

All other points raised on appeal by defendant lack sufficient merit to warrant further discussion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5084-17T1